**In re MICROFAB, INC., Debtor.**

**Bankruptcy No. 87–11538–CJK.**

United States Bankruptcy Court,
D. Massachusetts.

Aug. 18, 1989.

See also, Bkrtcy., 105 B.R. 152, Bkrtcy., 105 B.R. 161.

Nancy Preis, Asst. Atty. Gen., Boston, Mass., for Commonwealth.

Gary Cruickshank, Boston, Mass., trustee.

Joel Rosenthal, Boston, Mass., for New England Laminates, Inc.

CAROL J. KENNER, Bankruptcy Judge.

The Commonwealth of Massachusetts has objected to the Chapter 7 Trustee's notice of intent to discontinue property damage insurance (filed February 27, 1989) on the Debtor's real property in Amesbury, Massachusetts (the "Site"). The Trustee argues that the discontinuance is justified because the cost to the estate for continuing to insure the Site, $33,000.00 per year, exceeds the benefit such insurance would provide to the estate, where the estate's equity in the Site is uncertain. The Commonwealth contends that the Trustee has an obligation to insure the Site for the benefit of the Commonwealth as a prospective lien holder [1] and for the benefit of the

---

**1.** The Commonwealth has asked this court for, and the Court has issued, a declaration permit-

estate, against which the Commonwealth has filed administrative expense claims for the costs (most of which have not yet been incurred) of assessing and remediating the contamination.

The Site consists of a manufacturing plant on a thirteen acre site that has been extensively contaminated with hazardous materials.[2] The Trustee and the Commonwealth agree with the conclusion of a December 1987 appraisal that if the Site were rid of the contamination and the consequent environmental liability that attaches to its owner under state and federal environmental laws, it would have a fair market value of $3,200,000.[3] At present, however, it has no value.[4] The Trustee has attempted to sell it, but with no success. He held a public auction in January, 1988, but there were no bidders. He has also tried to sell the Site privately, but no one has offered to buy it.

The Site may in the future become valuable and marketable, but the Court cannot speculate as to what that future value might be. The future value is necessarily contingent on numerous variables, including the total amount of the cleanup costs, the number of years the cleanup effort will require, the willingness of prospective purchasers to buy real estate so long associated with environmental liabilities, and future market conditions.

For all these reasons, I conclude that the property presently has no insurable value. Therefore, I hereby *overrule* the Commonwealth's objection to the Trustee's notice of intent to discontinue property insurance.

ting the Commonwealth to file a lien on the property pursuant to G.L. c. 21E, § 13, which lien would secure the costs to the Commonwealth of remediating the contamination of the property at issue here. The Commonwealth has not yet recorded such a lien, which raises a question as to the Commonwealth's standing to object as a secured party. Since I overrule this objection on other grounds, I do not reach this standing issue or any other that may be raised by this objection.

2. For purposes of this objection, the parties relied on the evidence they submitted in conjunction with the Commonwealth's motion for an order requiring the Trustee to perform the cleanup of the property or, in the alternative, for an order permitting the Commonwealth to do so on an administrative expense basis. The Court's findings on this objection are based on that evidence. See the Memorandum of Decision entered today on the cleanup motion.

3. The Trustee states that the property is encumbered by a mortgage in favor of BayBank Middlesex in the approximate amount of $1,200,000. I make no finding as to the validity, amount, or priority of that mortgage, but the existence of that mortgage only bolsters the Trustee's contention that the estate has little or no equity in the property.

4. The Commonwealth concedes this point. At a hearing on another motion concerning this property, counsel for the Commonwealth stated: "As far as I can see, this property has no market value at this point and is unlikely to at any time in the future." Transcript of Hearing on Motions in this case, held July 26, 1988, at page 25.